# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALL SAINTS MEDICAL CENTER<br>400 WEST RIVER ROADS PARKWAY<br>GLENDALE, WI 53212<br><br>Plaintiff,<br><br>v.<br><br>ALEX M. AZAR II,<br>Secretary of Health and Human Services<br>200 Independence Avenue, SW<br>Washington, DC 20201<br><br>Defendant. | Civil Action No. |

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**ALL SAINTS MEDICAL CENTER** ("Plaintiff"), by and through its undersigned attorneys, brings this action against defendant **ALEX M AZAR II**, in his official capacity as Secretary of Health and Human Services, and states as follows:

### A. Jurisdiction and Venue

1. This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §§ 1395 et seq.) hereinafter referred to as the "Medicare Act" or the "Act," which establishes the Medicare program (the "Medicare Program" or the "Program"), the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, et seq., and under 28 U.S.C. § 2201 (the Declaratory Judgment Act).

2. This Court has jurisdiction under 42 U.S.C. § 1395oo(f).

3. Venue lies in this judicial district under 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1391.

**B.     Parties**

4. **ALL SAINTS MEDICAL CENTER** (the "Hospital") during the relevant period was an acute care hospital located in Glendale, Wisconsin. The Hospital furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program.

5. **ALEX M. AZAR II** is the Secretary of Health and Human Services ("HHS"), the federal department which contains the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare Program. Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA"). In this Complaint, the Hospital will refer to the agency as CMS or HCFA, as appropriate, depending on the context.

**C.     Medicare Payment**

6. The Medicare statute establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease. Pursuant to 42 U.S.C. § 1395cc, the Hospital entered into a written agreement with Defendant to provide hospital services to eligible individuals.

7. Under 42 U.S.C. § 1395x(v)(1)(A), providers of inpatient hospital services, such as Hospital, are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. "Reasonable cost" is defined as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be

included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. § 1395x(v)(1)(A).

8. In adopting regulations, the statute requires the Secretary to "take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered." Id. The Secretary has elected to publish many rules implementing the Medicare program in various manuals, such as the Provider Reimbursement Manual.

9. Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals, such as Hospital, for inpatient hospital operating costs. See 42 U.S.C. § 1395ww(d). Effective with cost reporting years beginning on or after October 1, 1991, a complementary PPS process was implemented to reimburse hospitals, such as Hospital, for inpatient hospital capital-related costs. See 42 U.S.C. §1395ww (g).

10. Payment to providers of services is commonly carried out by Medicare Administrative Contractors ("MAC"), acting as agents of the Secretary pursuant to contracts with the Secretary. A MAC is assigned to each hospital, such as Hospital, that participates in Medicare. MACs make periodic interim payments to providers, subject to subsequent adjustments for overpayments or underpayments. 42 U.S.C. § 1395h. The Hospital's MAC for the fiscal years at issue is National Government Services. (the "MAC").

11. At the close of its fiscal year ("FY"), a hospital must submit a "cost report" showing both the cost incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare. 42 C.F.R. §§ 413.24 and 413.50. The hospital must submit its cost report in compliance with law. The hospital's MAC is required to analyze and audit the cost report and issue a

Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period in compliance with law.

**D.     The Medicare Payment Appeals Process**

12.     A provider has a right to obtain a hearing before the Provider Reimbursement Review Board ("Board" or "PRRB") by filing an appeal with the PRRB within 180 days of receiving its NPR if the provider "is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1886" of the Medicare Act. See 42 U.S.C. § 1395oo(a)(1)(A)(2). The PRRB has jurisdiction over appeals from the Secretary's determinations if the provider is dissatisfied with the Secretary's final determination, the amount in controversy is equal to $10,000 or more, and the provider requests a hearing within 180 days after notice of the Secretary's determination. 42 U.S.C. § 1395oo(a). Two or more hospitals may file a group appeal "if the matters in controversy involve a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more." Id. § 1395oo(b).

13.     The PRRB Rules, an informal guide not published in accordance with the notice and comment provisions of the APA, and thus lacking the force of law, nonetheless reflect the PRRB's formal, published statement regarding practice and procedure before the PRRB. The Rules are posted on the worldwide web.[1]

14.     The PRRB has long since recognized its inherent authority to review any matter covered by a cost report. Indeed, the Board stated this principle as early as 1979:

> The Board is of the opinion that it has [jurisdiction]. Under the provisions of 42 CFR § 405.1851, Subpart R, the Board must fully inquire into all matters at issue; and, under § 405.1869, the Board has the power to make any other modifications on matters covered by such cost report, even though such matters

---

[1] The Board *Rules* is a set of guidelines explaining PRRB practice and procedure which are published on the internet. *See* https://www.cms.gov/Regulations-and-Guidance/Review-Boards/PRRBReview/PRRB_Instructions.html (Most recently reviewed on 2/7/2018)

4

> were not considered in the Intermediary's determination. Accordingly, for completeness of the record and in consideration of due process, the Board elicited from the parties additional evidence and/or argumentation concerning the appropriateness of whether the provider is entitled to "relief" under any of the exception provisions of § 405.460(f)(2) and (3).

PRRB Dec. No. 79-D22 (April 13, 1979) (Medicare and Medicaid Guide (CCH) ¶ 29,913).

15. The recognition in 1979 by the PRRB of its inherent authority to review all matters covered by the cost report, with or without an explicit MAC audit adjustment, presaged by nearly a decade the Supreme Court's similar pronouncement in the landmark decision of Bethesda Hospital Association v. Bowen, 485 U.S. 399 (1988).

16. A provider has the right to "self-disallow," and thereby preserve the right to appeal to the PRRB, an item that it does not claim on its cost report where a Medicare regulation, manual, ruling or other legal authority prohibits the provider from claiming the item. PRRB Rule 7.2A.

E. **Procedure for Administrative and Judicial Review of PRRB Decisions**

17. In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, under 42 C.F.R. § 405.1873, the PRRB is authorized to decide questions relating to its jurisdiction. The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877. The Secretary has delegated her authority under the statute to review PRRB decisions to the CMS Administrator.

18. A hospital may obtain judicial review of a final administrative decision, including a decision relating to the jurisdiction of the PRRB, by filing suit within 60 days of receipt of notice in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. § 1395oo(f).

19. A decision of the PRRB that the PRRB lacks jurisdiction is subject to judicial review. *See*, *UHI Inc. v Thompson*, 250 F.3d 993 (Sixth Circuit 2001) (PRRB decision declining to assert jurisdiction where provider failed to satisfy a deadline is subject to judicial review); *Inova Alexandria Hospital v. Shalala*, 244 F.3d 342 (Fourth Cir. 2001) (PRRB decision declining to assert jurisdiction where provider failed to satisfy a deadline is subject to judicial review); *Auburn Medical Center v Sebelius,* 642 F.3d 1145 (D.C.C. 2011) (PRRB decision declining to assert jurisdiction under theory of equitable tolling is subject to judicial review) (Reversed on other grounds, *Sebelius v. Auburn Medical Center*, 133 S.Ct. 117 (2013)).

F.   **Medicare Payment for Disproportionate Share Hospital Adjustment**

20. Under PPS, Medicare's payments to hospitals for inpatient operating costs are based on predetermined, nationally applicable rates, subject to certain payment adjustments. 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412. One of these adjustments, known as the disproportionate share hospital or "DSH" Adjustment, is available to PPS hospitals that qualify if they serve a disproportionate share of low-income patients. See 42 U.S.C. § 1395ww(d)(5)(F).

21. During the relevant period the MAC made two audits adjustment regarding the DSH Adjustment in issuing the NPR.

22. Under 42 U.S.C. § 1395ww(d)(5)(F)(vi), the Secretary is required to make an add-on payment for operating costs for PPS hospitals serving a "significantly disproportionate number of low-income patients, which is computed for a given cost-reporting period based on the sum of two fractions.

23. On fraction is referred to in this Complaint as the "Low Income Proxy" or the "Medicaid Proxy." This proxy requires the MAC to determine the number of inpatient days for patients who are "eligible for medical assistance under a State plan approved under subchapter XIX of this chapter." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). In general, the greater the number of patients

eligible for medical assistance that is included in the number of inpatient days that a hospital has, the larger its Medicare DSH adjustment will be. The other fraction, known as the "Medicare Proxy," is based on the number of low income Medicare patients a hospital serves. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

### G.     The Number of Medicaid Eligible Days For Purposes Of The Low Income Proxy

24.     A final rule adopted by the Secretary in 1986 established the government's policy underlying the methodology to be used to count a PPS hospital's Medicaid inpatient days for purposes of determining the DSH Adjustment. See 51 Fed. Reg. 16,772 (1986), as codified at 42 C.F.R. § 412.106. This rule limited the number of Medicaid inpatient days to be used to compute the DSH Adjustment by allowing hospitals to include only the days:

> ... for which benefits are payable under [Medicaid]. Any day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days.

This final rule impermissibly limited the effect of the DSH statute by allowing hospitals to include only "paid" Medicaid inpatient days, and not all "eligible" Medicaid inpatient days, when computing the DSH adjustment. This is known as the Secretary's "paid days" policy.

25.     The United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits invalidated the "paid days" policy. *See Jewish Hosp., Inc. v. Sec'y of Health and Human Servs.,* 19 F.3d 270 (6th Cir. 1994); *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996); *Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984 (4th Cir. 1996). Each of these courts held that the final rule limiting the number of Medicaid inpatient days to those for which payment was made by Medicaid was inconsistent with the Medicare statute on which it was based. No United States Court of Appeals has upheld the validity of the DSH "paid days" rule.

26. As a result of these four judicial decisions, the HCFA Administrator formally changed the government's policy in a HCFA Ruling published in accordance with 42 C.F.R. § 401.108. This Ruling, HCFAR 97-2, was dated February 27, 1997 and provides that, for purposes of the "Medicaid Low Income Proxy," all inpatient hospital days when services were provided to patients eligible for Medicaid would be counted, regardless of whether the hospital actually received payment from Medicaid for the services rendered on those days. This is known as the Secretary's "eligible days" policy.

27. By its terms, HCFAR 97-2 is binding on "all HCFA components, Medicare contractors, the Provider Reimbursement Review Board, the Medicare Geographic Classification Review Board, the Departmental Appeals Board, and administrative law judges who hear Medicare appeals."

28. The Secretary conceded in HCFAR 97-2 that his "paid days" policy was "contrary to the applicable law in four judicial circuits" and acquiesced in those decisions on a national basis.

29. HCFAR 97-2 also explicitly provides that (1) it is effective for "all cost-reporting periods beginning on or after February 27, 1997" and (2) that all eligible days "may be included" for "cost reports that are settled by fiscal intermediaries on or after" February 27, 1997.

30. Although a provider has the right to appeal a DSH Adjustment to the PRRB, the burden is not on the provider to claim the DSH Adjustment or to appeal the failure of the MAC to properly compute the DSH Adjustment. CMS is on record in the Federal Register that a provider need not claim the DSH Adjustment as part of the formal cost reporting process. See 51 Fed. Reg. 31457-58, September 3, 1986. Unpublished decisions of the PRRB cite and rely on this authority See, e.g., Medical Center of South Arkansas, PRRB Case No. 03-0929 (November 19, 2008) (Unpublished); Edward White Hospital, PRRB Case No. 04-1905GC (September 28, 2010) (Unpublished);

Brooksville Regional Hospital, PRRB Case No. 07-2806 (November 25, 2008) (Unpublished).[2]

31. CMS established a "practical impediments" requirement for determining PRRB jurisdiction over a provider's appeal of DSH Medicaid eligible days where there is not a cost report adjustment and where the provider did not include a "protested item" on its cost report. See, Norwalk Hospital (Norwalk, Conn.) v. Blue Cross Blue Shield Association / National Government Services, PRRB Dec. No. 2012-D14 (March 9, 2012) (Medicare and Medicaid Guide (CCH) ¶ 82,791), rev'd CMS Administrator Decision May 21, 2012 (Medicare and Medicaid Guide (CCH) ¶ 82,809; Danbury Hospital v. Blue Cross Blue Shield Association / National Government Services, PRRB Dec. No. 2014-D3 (February 11, 2014) (Medicare and Medicaid Guide (CCH) ¶ 82,898); CMS Alert 10 (May 23, 2014).[3]

32. The "practical impediment" standard is unlawful for, among others, the following reasons:

- A. It lacks the force of law because CMS did not publish it with notice and comment rule making as required by the Medicare Act, 42 U.S.C.§ 1395hh(a)(2),[4] and the Administrative Procedure Act, 5 U.S.C.§§ 551-559.

- B. It should not be applied for purposes of determining PRRB jurisdiction. Rather, the "practical impediment" requirement goes to the merits of whether a provider has satisfied its burden to support its claim for the inclusion of Medicaid eligible days that the provider did not claim when it filed its cost report. For the PRRB to apply such a standard to a jurisdictional determination is tantamount to, on the one hand, denying to assert jurisdiction but, on the other handing, reaching a decision on the merits. In essence, the "practical impediment" requirement constitutes an exhaustion of remedies requirement, not a jurisdiction requirement. As such, it is unlawful abridgement of a provider's statutorily guaranteed appeal right because it has not

---

[2] Until mid-2013, the PRRB did not publish the overwhelming majority of its jurisdictional decisions.

[3] https://www.cms.gov/Regulations-and-Guidance/Review-Boards/PRRBReview/Downloads/PRRBWebsite2013_Alerts.pdf[3] (Reviewed 1/15/2018)

[4] "No rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this subchapter shall take effect unless it is promulgated by the Secretary by regulation under paragraph (1)."

26664806.1

been promulgated as a regulation as prescribed by 42 U.S.C. § 1395hh(a)(2).

C. Its application unfairly deprives the provider of the DSH Adjustment to which it otherwise clearly is entitled under HCFAR 97-2 (2/27/1997). It is well established law that all Medicaid eligible days, whether paid or unpaid, must be included in the Medicaid Fraction of the DSH Adjustment. To deprive the provider of the DSH Adjustment where for reasons beyond the control of the provider, and despite the best efforts of the provider (*e.g*., where the State has not released the verification data as of the deadline for filing the cost report but does so later), is manifestly unfair and undermines well established law.

33. Although the "practical impediment" standard lacks the force of law, the PRRB has applied the practical impediment standard in several decisions as the basis for finding that it possesses jurisdiction:

A. In *Barberton Citizens Hosp. vs. CGS Administrators,* PRRB Dec. No. 2015-D5 (March 19, 2015) ("*Barberton*")*,* the PRRB held that it has authority to assert jurisdiction over a hospital's appeal of additional Medicaid eligible days for the DSH adjustment calculation if that hospital can establish a "practical impediment" as to why it could not claim these days at the time that it filed its cost report (*i.e.,* the fact that only Medicaid eligible days verified by the State can be claimed on the cost report and that the hospital, through no fault of its own, was unable to verify the Medicaid eligible days at issue from States' records prior to filing its cost report due to lack of availability or access to the relevant State records).

B. The PRRB has issued decisions consistent with *Barberton* where a hospital alleges that that not all Medicaid eligible days were verified by the State as of the deadline for the hospital to file its cost report. *See, e.g*., *University of Colorado*, PRRB Case No. 05-1509, April 15, 2015 (Medicare and Medicaid Guide (CCH) ¶82,984); *Blumberg Ribner 15th Medicaid Eligible Days Group Appeal – Bethesda Hospital Jurisdictional Challenge – Additional Medicaid Eligible Days,* PRRB Case No. 07-2087G, June 5, 2015; *Biloxi Regional Medical Center*, PRRB Case No. 07-2390, June 11, 2015.

H. **The Medicare Proxy Issue**

34. The SSI/Medicare fraction numerator is the number of inpatient days for patients who were entitled to both Medicare Part A and Supplemental Security Income ("SSI") benefits, and the denominator is the number of inpatient days for patients entitled to Medicare Part A. Id. (the "Medicare Proxy.")

35. The SSI program is administered by the Social Security Administration ("SSA"); therefore, identifying patients who were entitled to SSI during their hospitalization requires access to SSA's SSI data. To implement the DSH legislation, the number of patient days for those patients entitled to both Medicare Part A and SSI is determined by matching data from the MEDPAR file, which is Medicare's database of hospital inpatients, with a file created for CMS by SSA to identify SSI-eligible individuals.

36. In accordance with the statute, the computation of the Medicare proxy is required to include all patients who are eligible for SSI.

37. The Hospital appealed to the PRRB regarding the failure of the MAC to include all SSI-eligible individuals in the Medicare Proxy.

## I. Facts Applicable to the Hospital

The following recitation of material facts is supported by the Administrative Record:

38. When the Hospital filed its cost report with the MAC for the Hospital's fiscal years ended ("FYEs") 6/30/2009, 6/30/2010 and 6/30/2011, the data regarding the number of Medicaid eligible days necessary to support its entitlement to the DSH Adjustment for the Hospital's FYEs 6/30/2009, 6/30/2010 and 6/30/2011 was unavailable through no fault of the Hospital and based on the failure of the State of Wisconsin Medicaid Program to release such data.

39. Based on the lack of data when the Hospital filed its cost report for FYEs, 6/30/2009, 6/30/2010 and 6/30/2011, the Hospital "self-disallowed" the Medicare DSH Adjustment, consistent with PRRB Rule 7.2(A).

40. By letters dated May 8, 2013, September 3, 2013 and June 12, 2014 the MAC issued the NPR for each of the Hospital's FYEs 6/30/2009, 6/30/2010 and 6/30/2011, respectively.

41. Reflecting that the Hospital self-disallowed the Medicare DSH Adjustment, the NPRs for FYEs 6/30/2009, 6/30/2010 and 6/30/2011 did not contain an audit adjustment explicitly referring to the Medicare DSH Adjustment.

42. The NPRs also reflected the failure of the MAC to include all SSI-eligible individuals in the Medicare Proxy.

43. By letters dated August 26, 2013, February 8, 2014 and December 8, 2014 *i.e.,* within 180 days of the NPRs for each of FYEs 6/30/2009, 6/30/2010 and 6/30/2011, respectively, the Hospital timely appealed to the PRRB, which included the Hospital's dissatisfaction with the Medicaid Proxy and the Medicare Proxy.

44. In three separate decisions dated December 12, 2017 for each of FYEs 6/30/2009, 6/30/2010 and 6/30/2011, the PRRB held that it did not possess jurisdiction over the Hospital's appeal of the Medicaid Proxy or the Medicare Proxy and the PRRB dismissed the Hospital's appeal regarding each of FYEs 6/30/2009, 6/30/2010 and 6/30/2011

45. The PRRB's basis for dismissing the Hospitals appeal was that the Hospital filed neither a claim nor a protested amount regarding the Medicaid Proxy Issue and because the PRRB found that the Medicare Proxy issue was subsumed by the Hospital's "systemic" appeal of the Medicare Proxy.

46. Each of the December 12, 2017 decisions of the PRRB is the final decision of the

Secretary over which this Court has jurisdiction. 42 U.S.C. § 1395oo(f)(1).[5] This Complaint is timely filed within sixty days of receipt of that decision by the Hospital's authorized representative. *Id*.

### J. Pertinent Information Relating to the Hospitals' DSH Appeals Only Became Available Years After the Hospital Filed Its Cost Report

47. The Hospital's challenge to the computation of the Medicaid Fraction of the DSH Adjustment relies on supporting State-verified data that only became available years after the Hospital filed its cost report.

48. Through no fault of the Hospital, the supporting State-verified data were not available when the Hospital filed its cost report for FYEs, 6/30/2009, 6/30/2010 and 6/30/2011

49. In dismissing the Hospital's Medicaid Fraction Issue claims, the PRRB failed to find that the Hospital self- disallowed the Medicaid Fraction Issue under Bethesda.

### COUNT I

50. The Hospital hereby incorporates by reference paragraphs 1 – 49 herein.

51. The Secretary failed to find that the Hospital exercised its right to self-disallow, thereby preserving for appeal and establishing the PRRB's jurisdiction over the Medicaid Proxy Issue.

52. The failure of the Secretary to find that the Hospital exercised its right to self-disallow, thereby preserving for appeal and establishing the PRRB's jurisdiction over the Medicaid Proxy Issue, was not supported by substantial evidence and was contrary to law.

53. The failure of the Secretary to find that the Hospital exercised its right to self-disallow, thereby preserving for appeal and establishing the PRRB's jurisdiction over the

---

[5] As of the date of this Complaint the Hospital has not received notice that the Administrator of CMS intends to review the decisions of the PRRB.

Medicaid Proxy Issue, was reversible error.

## COUNT II

54. The Hospital hereby incorporates by reference paragraphs 1 - 53 herein. Medicaid eligible but unpaid days must be included in the DSH Adjustment Medicaid proxy. *See Jewish Hosp., Inc. v. Secretary of Health and Human Services,* 19 F.3d 270 (6th Cir. 1994); *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996); *Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984 (4th Cir. 1996); HCFAR 97-2 (February 27, 1997).

55. The burden was not on the Hospital to claim the DSH Adjustment. CMS is on record in the Federal Register that a provider need not claim the DSH Adjustment as part of the formal cost reporting process. *See* 51 Fed. Reg. 31457-58, September 3, 1986.

56. The decision of the PRRB refusing to include the all Medicaid eligible days, and thus denying the Hospital the proper DSH Adjustment to which the Hospital was entitled for its FYE 9/30/2010 was not supported by substantial evidence, was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with applicable law.

57. The decision of the PRRB denying the Hospital the DSH Adjustment to which the Hospital was entitled for its FYEs, 6/30/2009, 6/30/2010 and 6/30/2011 was reversible error.

## COUNT III

58. The Hospital hereby incorporates by reference paragraphs 1 - 57 herein.

59. The decisions of the PRRB failed to recognize that under the Medicare Statute the PRRB's power extends to all matters covered by a cost report over which it has jurisdiction under 42 U.S.C. § 1395oo(a), including items that were not considered by the MAC in making its final determination and for which the MAC failed to make an audit adjustment. *See, e.g.,*

14

*Bethesda Hospital Association v. Bowen*, 485 U.S. 399, 405 (1988). (PRRB has jurisdiction over self-disallowed malpractice insurance costs); and *Loma Linda University Medical Center v. Leavitt,* 492 F.3d 1065 (9th Cir. 2007) (PRRB properly exercised jurisdiction over costs not included in cost report and not included in request for hearing).

60.     The decision of the PRRB failed to recognize that the PRRB's power extends to all matters covered by a cost report over which it has jurisdiction under 42 U.S.C. § 1395oo(a) was not supported by substantial evidence and was contrary to law.

61.     The decision of the PRRB failing to recognize that the PRRB's power extends to all matters covered by a cost report over which it has jurisdiction under 42 U.S.C. § 1395oo(a) was reversible error.

## COUNT IV

62.     The Hospital hereby incorporates by reference paragraphs 1 - 61 herein.

63.     All persons eligible for SSI must be included in the Medicare Proxy.

64.     The decisions of the PRRB failed to distinguish between the Hospital's hospital-specific challenge to the Medicare Proxy and the systemic challenge.

## COUNT V DECLARATORY JUDGMENT

65.     The Hospital hereby incorporates by reference paragraphs 1 - 64 herein.

66.     The Hospital brings this cause of action pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act) and Rule 57 of the Federal Rules of Civil Procedure for declaratory relief.

67.     Upon information and belief there are numerous similar cases currently pending before the PRRB.

68.     The parties disagree regarding the scope of the PRRB's jurisdiction over an issue

when the MAC has not made an adjustment to a cost report on that exact issue under appeal. The Hospital contends that the PRRB's jurisdiction extends to all matters covered by a cost report under 42 U.S.C. § 1395oo(a) and (d), including items that were not considered by the MAC in making its final determination and for which the MAC failed to make an audit adjustment. The Secretary contends that an adjustment on the exact issue under appeal is required to invoke the PRRB's jurisdiction.

69.     There is a live case and controversy regarding this issue, as demonstrated by the PRRB's decision in this matter, as well as, upon information and belief, numerous other similar matters now pending (and soon to be pending) before the PRRB.

70.     In *Norwalk* and *Danbury*, supra, the Secretary avoided judicial review of this issue by settling cases pending before the United States District Court for the District of Connecticut.[6]

71.     Accordingly, the Hospital seeks a declaratory judgment setting forth that the PRRB must accept jurisdiction over all matters covered by a cost report under 42 U.S.C. § 1395oo(a) and (d), even in instances when the MAC failed to make an audit adjustment regarding the exact issue in dispute, the issue was not expressly claimed by the Hospital in its as-filed cost report, or the issue was not considered by the MAC in making its final determination; provided that the Hospital timely files its appeal to the PRRB, and the amount in controversy is at or exceeds $10,000.00.

**WHEREFORE**, the Hospital respectfully requests that the Court enter an order holding that the PRRB's December 12, 2017 final decisions are unlawful and setting such decisions aside

---

[6] See, *The Norwalk Hospital Association v. Sebelius*, No. 12-1065; *Danbury Hospital v. Burwell*, No. 14-0556.

because:

(a) The decisions unlawfully deprive the Hospital of its right to appeal the final determination of the MAC regarding the Medicaid Proxy and the Medicare Proxy pursuant to 42 U.S.C. § 1395oo(a), 42 C.F.R.§ 405.1841(a);

(b) The decisions' conclusions of law that the PRRB does not have jurisdiction over the Hospital's appeal is arbitrary and capricious, contrary to law, and an abuse of discretion;

(c) The decisions unlawfully deprive the Hospital of the right to have all Medicaid eligible days included in the DSH Adjustment Medicaid proxy for FYE 9/30/2010 as provided by HCFAR 97-2;

(d) The decisions unlawfully deprive the Hospital of the right to have all patients eligible for SSI included in the DSH Adjustment Medicare Proxy for FYEs, 6/30/2009, 6/30/2010 and 6/30/2011; and

(e) The decisions unlawfully deprive the Hospital of its right to receive the DSH Adjustment to which it is entitled for FYEs, 6/30/2009, 6/30/2010 and 6/30/2011..

**K.   Requested Relief**

WHEREFORE, the Hospital requests that the Court enter an order:

(a) Vacating the decisions of the PRRB;

(b) Finding that the PRRB has jurisdiction over the Hospital's appeal of the Medicaid Proxy and the Medicare Proxy under 42 U.S.C. § 1395oo(a) and (d) for FYEs, 6/30/2009, 6/30/2010 and 6/30/2011;

(c)     Reinstating the decisions and ordering the PRRB that it possessed jurisdiction over the Hospital's appeal of the Medicaid Proxy and the Medicare Proxy for FYEs, 6/30/2009, 6/30/2010 and 6/30/2011;

(d)     Ordering CMS to remand this matter in writing to the PRRB with directions to include the additional Medicaid eligible days claimed by the Hospital for its DSH Adjustment computation for FYEs, 6/30/2009, 6/30/2010 and 6/30/2011;

(e)     Ordering CMS to remand this matter in writing to the PRRB with directions to include the additional patients eligible for SSI in the Medicare Fraction for its DSH Adjustment computation for FYEs, 6/30/2009, 6/30/2010 and 6/30/2011;

(f)     Ordering declaratory relief pursuant to 28 U.S.C. § 2201 declaring that the PRRB must accept jurisdiction over all matters covered by a cost report (as defined by the U.S. Supreme Court in *Bethesda*) under 42 U.S.C. § 1395oo(a) and (d), even in instances when the MAC failed to make an audit adjustment regarding the exact issue in dispute, the issue was not expressly claimed by the Hospital in its as-filed cost report, or the issue was not considered by the MAC in making its final determination; provided that the Hospital files an appeal to the PRRB within the time prescribed by the statute, and the amount in controversy is at least $10,000.00;

(g)     That this Court shall retain jurisdiction over this case for purposes of enforcement of compliance with this Court's order by the Secretary, CMS and the MAC;

(h)     Awarding the Hospital legal fees and costs;

(i)     Awarding the Hospital interest, pursuant to 42 U.S.C. § 1395oo(f)(2); and

(j)     Granting to the Hospital such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/Kenneth R. Marcus
Kenneth R. Marcus
D.C. Bar #MI 0016
HONIGMAN MILLER SCHWARTZ AND COHN LLP
660 Woodward Avenue, Suite 2290
Detroit, MI 48226
Telephone: (313) 465-7470
Facsimile: (313) 465-7471
Email: kmarcus@hongiman.com
*Counsel for Plaintiff*

February 8, 2018